JUSTEN S. BARKS,
SBN 326998
**BARKS PLLC**
1235 N. Loop West, Ste. 702
Houston, Texas 77227
(832) 416-1642 (Tel.)
(713) 383-6173 (Fax)
jbarks@barks.law

*Attorney for Plaintiff*
*BLUE BRAIN PRODUCTIONS LLC*

**UNITED STATES DISTRICT COURT FOR THE**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BLUE BRAIN PRODUCTIONS LLC,<br>Plaintiff,<br><br>vs.<br><br>PAUL SINACORE CASTING LLC d/b/a FIVE-TOOL PLAYER,<br>Defendant. | **Case No. 8:26-CV-02516**<br><br>**ORIGINAL COMPLAINT FOR COPYRIGHT INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, BREACH OF CONTRACT, SLANDER OF TITLE, DECLARATORY JUDGMENT, AND PERMANENT INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED**<br><br>Action Filed: September 2, 2026<br>Trial Date: TBD |

## ORIGINAL COMPLAINT

COMES NOW, BLUE BRAIN PRODUCTIONS, LLC ("BBP" or "Plaintiff") (and alleges the following against PAUL SINACORE CASTING LLC d/b/a FIVE-TOOL PLAYER ("PSC" or "Defendant").

## PARTIES

1. Plaintiff BBP is a Texas Limited Liability Company.

2. Upon information and belief, Defendant PSC does business as FIVE-TOOL PLAYER and is a limited liability company formed under the laws of California. It may be served via its registered agent, Paul Sinacore, at 9441 Reverie Road, Tujunga, CA 91041, or wherever it may be found.

## JURISDICTION AND VENUE

3. This action partially arises under the copyright and trademark laws of the United States, including the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, and the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, respectively.

4. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because the plaintiff resides in a different state than the defendant, and the amount in controversy exceeds $75,000.

5. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's state law claims that are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case and controversy.

6. This Court has personal jurisdiction over Defendant, and venue is available in this Court because PSC was formed in, does business in, and is at home in this state. Plaintiff disputes that the Central District of California is either the only venue or a proper venue to resolve the Parties' dispute.

7. Plaintiff asserts that Defendant entered into agreements which form the basis of all claims and control the relations between all parties in this litigation which

identify and expressly select the laws of the State of Texas as the choice of law for interpreting those agreements.

## FACTS

8. This case concerns the copyright ownership of a motion picture project and its associated screenplay with the working title "Towpath," the audio-visual derivative work prepared thereon, and the accompanying rights to each.

### A. The Project Begins with Hiring Personnel and an Investment.

9. In February 2024, Patricia Robinson ("ROBINSON"), owner and sole member of BBP, received an email from an old friend, Ralph Cinque ("CINQUE"), notifying her of his newest motion picture screenplay and project with the working title "Dovey's Promise" (the "Project").

10. At the outset Project involved a screenplay, written by CINQUE, based on the life of Dovey Roundtree, an African American civil rights activist and attorney. Ms. Roundtree was a defense attorney for Ray Crump, a man who stood trial for the 1964 murder of Mary Pinchot Meyer. Successful in her defense, Ms. Roundtree's strategy eventually led to her appointment in numerous high-profile murder cases.

11. The Crump trial was the principal subject of the Project, with Ms. Roundtree's personal life dramatized and adapted therefore.

12. On March 18, 2024, CINQUE and BBP entered into an investment agreement, whereby CINQUE invested Eighty Thousand and 00/100 Dollars ($80,000) in BBP to produce and develop the Project.

13. ROBINSON, as the sole owner of BBP, deposited the funds into an account specifically for the Project, separate from personal funds.

14. ROBINSON, acting and doing business as BBP keep detailed records and an accounting of all expenses associated with the project while in development,

during principal photography, and during the limited post-production BBP was able to engage in.

15. Together, CINQUE, ROBINSON, and the initial director, Sam French ("FRENCH") coordinated to hire cast, scout and secure film locations, and hire crew members.

16. CINQUE recommended that Paul Sinacore ("SINACORE") be cast as the character Jim Truitt and Golden Globe and Oscar nominee Eric Roberts play the character Ryle.

17. Upon information and belief, CINQUE offered the Truitt role to SINACORE as a favor for SINACORE's casting agency, PSC, to aid in securing Mr. Roberts' participation in the Project.

18. Upon information and belief, on or about March 19, 2024, PSC executed agreements with Mr. Roberts and actor Bourke Floyd, directly or through their agents, to appear in the Project.

**B. Sinacore and Robinson Meet After He Was Hired.**

19. SINACORE and ROBINSON were first introduced via email on or about March 21, 2024, when SINACORE emailed BBP confirming Mr. Roberts' contract for the Project.

20. Shortly thereafter, at CINQUE's direction, BBP fired FRENCH as director of the Project.

21. On April 4, 2024, the cast and crew were informed that SINACORE would replace FRENCH as Director for the Project.

**C. Paul Sinacore Signs Numerous Contracts for the Project.**

22. On April 6, 2024, in connection with his new role in the Project, SINACORE negotiated and executed several contracts with BBP. Each titled a

"CREW MEMBER DEAL MEMO" (generally, a "DEAL MEMO"), these contracts generally provide as follows:

a. a DEAL MEMO 1 with Five-Tool Player for the position of Executive Producer;
b. a DEAL MEMO 2 with SINACORE for the position of Director;
c. a DEAL MEMO 3 with SINACORE for the position of Producer/Casting Director;
d. a DEAL MEMO 4 with Five-Tool Player for the position of Executive Producer/Co-Production; and
e. a second DEAL MEMO 5 with SINACORE for the position of Director.

23. All five DEAL MEMOs from April 6, 2024, contain the following content and language.

a. They are on BBP letterhead;
b. They are executed by SINACORE as the crew member and countersigned by ROBINSON as Producer and representative of BBP.
c. They indicate a Project start date of early May 2024.
d. They assign all rights, results, and proceeds (the "Proceeds") of the signatory's contracted personal services to BBP, **including the right to make any changes**.
e. They each state that, "Producer is the sole author and owner of the Proceeds."
f. They each involve the Project identified with the "Working Title" of "Dovey's Promise."

g. They each contain a choice of law provision which states, "This Agreement is to be interpreted according to the law of Texas applicable to agreements made and entirely performed therein, and the courts located in San Antonio, Texas shall have exclusive jurisdiction of all cases."

h. They each contain an integration clause, stating that each "contains the entire understanding of the parties" and that "[n]o representations or warranties have been made other than those expressly provided for herein."

24. ROBINSON signed all five DEAL MEMOs as Producer on behalf of BBP, the production company.

25. DEAL MEMO 1 and 4 were signed by SINACORE as an individual.

26. DEAL MEMO 2, 3, and 5 indicate that "Five-Tool Player LLC" is the contracting party.

27. Upon information and belief, SINACORE signed DEAL MEMO 2, 3, and 5 as a representative of "Five-Tool Player LLC."

28. Upon information and belief, the inclusion of "Five-Tool Player LLC" was a scrivener's error, because Five-Tool Player LLC does not exist. However, Paul Sinacore Casting LLC d/b/a Five-Tool Player does exist.

29. Upon information and belief, PSC does regular business under the name FIVE-TOOL PLAYER.

30. SINACORE holds PSC out to the public as his casting agency.

31. Conversely, SINACORE holds PSC d/b/a FIVE-TOOL PLAYER out to the public as his production company.

32. Upon information and belief, SINACORE has represented to one or more third parties that PSC d/b/a FIVE-TOOL PLAYER is the sole Executive

Producer and Producer of the Project, including through publicly available advertisements and marketing.

33. Upon information and belief, SINACORE has represented to one or more third parties that PSC d/b/a FIVE-TOOL PLAYER was responsible for funding post-production of the Project, including editing, sound mixing, and visual effects.

34. On or about June 29, 2024, PSC d/b/a FIVE-TOOL PLAYER executed an agreement with a man named Jon James Smith to provide video editing services for the project.

35. In connection with PSC d/b/a FIVE-TOOL PLAYER's agreement with Jon James Smith, PSC d/b/a FIVE-TOOL PLAYER agreed to provide Mr. Smith with "all necessary materials, including raw footage and audio, scripts [SIC] to complete the editing work".

36. According to the PSC d/b/a FIVE-TOOL PLAYER agreement with Mr. Smith, Mr. Smith lives in London, UK.

37. Upon information and belief, PSC d/b/a FIVE-TOOL PLAYER copied and distributed, without any authorization from BBP or ROBINSON raw footage to engage Mr. Smith in the preparation of derivative works of the Project.

38. Upon information and belief, PSC d/b/a FIVE-TOOL PLAYER, acting through its owner and CEO, SINACORE, paid Mr. Smith to prepare the unauthorized derivative work, oversaw Mr. Smith's work, directed Mr. Smith's work, agreed to provide Mr. Smith a credit in the final release of the Project, and accepted an assignment of the intellectual property in and to Mr. Smith's final unauthorized derivative works.

39. BBP did not authorize PSC d/b/a FIVE-TOOL PLAYER to engage in or pay for post-production activities in connection with the Project.

40. There are no formal contracts between ROBINSON, SINACORE, PSC d/b/a/ FIVE-TOOL PLAYER outside of the five DEAL MEMOs described above.

**D. Post-Production and Promotion of *Towpath***

41. From May 5 to May 14, 2024, principal photography occurred in Blanco County and Bexar County, Texas.

42. After principal photography wrapped SINACORE returned to California.

43. On or about June 29, 2024, PSC d/b/a FIVE-TOOL PLAYER, with SINACORE as signatory, signed the PSC d/b/a FIVE-TOOL PLAYER agreement with Jon James Smith to edit the Project. The PSC d/b/a FIVE-TOOL PLAYER agreement assigns all ownership to the Producer, who "retain[s] all intellectual property rights to the edited footage and any materials created by the Editor during the project. The Editor hereby assigns and transfers to the Producer all rights, titles, and interests in and to the edited footage."

44. The PSC d/b/a FIVE-TOOL PLAYER agreement ownership provision directly conflicts with the DEAL MEMOs.

45. BBP was not aware of PSC d/b/a FIVE-TOOL PLAYER's side-agreement with Mr. Smith.

46. From July 2024 and September 2024, SINACORE and ROBINSON's working relationship quickly deteriorated.

**E. Defendant Distributes Footage It Does Not Own.**

47. On November 10, 2025, BBP obtained a valid copyright registration with the United States Copyright Office for the production, direction, cinematography, and editing of footage for the Project known as *Towpath*, Reg. No. PAu 4-291-793 ("Copyrighted Footage"). The registration includes all cinematographic material and production as a motion picture.

48. BBP authorized and paid for the creation of a trailer using the Copyrighted Footage.

49. The authorized trailer includes credits for BBP and, consistent with the DEAL MEMOs, PSC d/b/a FIVE-TOOL PLAYER. BBP is credited first and within the first two seconds of the trailer.

50. Defendant has made and continues to make misrepresentations regarding the ownership of the Project, both in advertising media and in connection with the authorized trailer.

51. Upon information and belief, Defendant own(s) and operate(s) the IMDb.com page titled "Towpath" located on the Internet at <www.imdb.com/title/tt31805321/> (the "IMDB Page").

52. Upon information and belief, PSC d/b/a/ FIVE-TOOL PLAYER has the ability to publicly post to the IMDB Page.

53. The IMDB Page identifies SINACORE as the sole "Producer" and "FIVE-TOOL PLAYER" as the sole production company.

54. The IMDB Page hosts a trailer for the Project.

55. Upon information and belief, Defendant edited, or commissioned the editing of, the trailer without BBP's authorization (the "Edited Trailer").

56. The Edited Trailer removes the first two seconds along with any reference to BBP.

57. The IMDB Page hosts the Edited Trailer.

58. The IMDB Page's "Full cast & crew" link identifies SINACORE as the sole "Producer," and no mention is made of BBP.

59. The IMDB Page's "Details" section identifies "Five-Tool Player" as the sole "Production Company," and no mention is made of BBP.

60. Upon information and belief, Defendant own(s) and operate(s) the YouTube.com page "Five-Tool Player" located on the Internet at <www.youtube.com/@Five-ToolPlayer> (the "YouTube Page").

61. Upon information and belief, Defendant has the ability to publicly post to the YouTube Page.

62. On or about October 12, 2024, Defendant uploaded the Edited Trailer to the YouTube Page.

63. In addition to hosting the Edited Trailer for public performance, the description of the Edited Trailer includes a copyright notice "© 2025 – Paul Sinacore."

64. Upon information and belief, Defendant edited or engaged a third-party at its direction to edit, the Edited Trailer to include incorrect, fraudulent, and wrongful copyright management information identifying "Paul Sinacore" and not "Blue Brain Productions" as the owner of the Copyrighted Footage embodied in the Edited Trailer.

65. Neither the YouTube Page nor the Edited Trailer's description make mention of BBP.

66. Upon information and belief, Defendant own(s) and operate(s) the TheMovieDatabase.com page titled "Towpath" located on the Internet at <www.themoviedb.org/movie/1480256-towpath> (the "TMDB Page").

67. Upon information and belief, Defendant has the ability to publicly post to the TMDB Page.

68. On the TMDB Page's "Full Cast & Crew" link, SINACORE is identified as the sole "Producer" and no mention is made of BBP .

69. The TMDB Page includes a link to the Edited Trailer hosted on the YouTube Page and visitors are able to view the Edited Trailer on the TMDB Page.

70. Upon information and belief, Defendant own(s) and operate(s) the Letterboxd.com page titled "Towpath" located on the Internet at <www.letterboxd.com/film/towpath/> (the "Letterboxd Page").

71. On the Letterboxd Page's "Crew" link, SINACORE is identified as the sole "Producer," and no mention is made of BBP.

72. On the Letterboxd Page's "Details" link, "Five-Tool Player" is identified as the "Studio," and no mention is made of BBP.

73. Defendant does not have authorization to discredit, change the credit, or remove the credit of BBP.

74. Defendant does not have authorization to distribute, host, post, or publicly perform any footage from the Project, including any of the Copyrighted Footage embodied in the Edited Trailer.

75. Defendant does not have authorization to modify or alter the trailer authorized by BBP, including the alteration and removal of copyright management information identifying BBP as the owner of the Copyrighted Footage.

**F. *Towpath* is *Dovey's Promise***

76. "Dovey's Promise" was the "working title" of the Project in every DEAL MEMO signed by every cast and crew member.

77. The Project was only given the new working title of "Towpath" once SINACORE began his rewrites and modifications to CINQUE's script approximately two weeks before principal photography began.

78. The cast, crew, locations, and schedules were secured for Project, irrespective of the working title or the content of the shooting script.

79. The Project, irrespective of screenplay, tells the same story about Dovey Roundtree that CINQUE conceived and invested in.

80. As a result of Defendant's bad acts described hereinabove, Plaintiff has been unable to complete the Project, secure funding, or secure distribution.

81. As a result of Defendant's bad acts described hereinabove, Plaintiff was sued by CINQUE on the mistaken belief that Plaintiff and ROBINSON were engaged in an effort to deprive him of his investment.

82. As a result of Defendant's bad acts described hereinabove, Plaintiff and ROBINSON were forced to hire counsel to defend against SINACORE's frivolous related lawsuit, Case No. 2:25-CV-3251-MRA-PVC, and to prosecute their own claims against him.

## COUNT I—COPYRIGHT INFRINGEMENT
## UNDER 17 U.S.C. § 501 *ET. SEQ.*

83. Plaintiff restates and incorporates by reference the facts and allegations in paragraphs 1-81 for all purposes.

84. The Copyrighted Footage is an original work of audio-visual cinematographic material containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et. seq.

85. BBP is the exclusive, actual, and beneficial owner of all rights in and to the Copyrighted Footage, which is the subject of a valid copyright registration issued by the Register of Copyrights.

86. Defendant's acts of posting and distributing the Edited Trailer through the movie database websites is an unauthorized distribution, copying, and public performance of the Copyrighted Footage.

87. Defendant had access to the Copyrighted Footage because BBP sent them the Copyrighted Footage to prepare a final edit, consistent with the obligations stated in the DEAL MEMOs.

88. Defendant's unauthorized distribution, reproduction, preparation of derivative works, and public performance, as alleged above, each constitute separate infringements of BBP's rights in and to the federally registered audio-visual Copyrighted Footage.

89. The foregoing acts of copyright infringement have been willful and intentional.

90. As a direct and proximate result of their wrongful conduct, Defendant has realized and will continue to realize benefits rightfully belonging to BBP. Accordingly, BBP is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at BBP's election, pursuant to 17 U.S.C. § 504(b), BBP is entitled to its actual damages plus Defendant's profits from infringement, to be proven in trial.

91. BBP is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

## COUNT II—VICARIOUS COPYRIGHT INFRINGEMENT

92. Plaintiff restates and incorporates by reference the facts and allegations in paragraphs 1-90 for all purposes.

93. The Copyrighted Footage is an original work of audio-visual cinematographic authorship containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, *et seq*.

94. BBP is the exclusive, actual, and beneficial owner of all rights in and to the Copyrighted Footage, which is the subject of a valid copyright registration issued by the Register of Copyrights.

95. Defendant's creation and use of the Edited Trailer is an unauthorized distribution, reproduction, and public performance of the Copyrighted Footage.

96. Defendant had access to the Copyrighted Footage because BBP sent them the Copyrighted Footage to prepare a final edit, consistent with the obligations stated in the DEAL MEMOs.

97. Defendant's activities, as alleged herein, constitute vicarious infringement of BBP's rights in and to the federally registered copyright in the Copyrighted Footage, in that Defendant had the right and ability to supervise such infringement, and because Defendant had a direct financial interest in the exploitation of the Edited Trailer.

98. The foregoing acts have been willful and intentional.

99. As a direct and proximate result of their wrongful conduct, Defendant have realized and will continue to benefits rightfully belonging to BBP. Accordingly, BBP is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at BBP's election, pursuant to 17 U.S.C. § 504(b), BBP is entitled to its actual damages plus Defendant's profits from infringement, to be proven in trial.

100. BBP is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

## COUNT III—CONTRIBUTORY COPYRIGHT INFRINGEMENT

101. Plaintiff restates and incorporates by reference the facts and allegations in paragraphs 1-99 for all purposes.

102. The Copyrighted Footage is an original work of audio-visual cinematographic material containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, *et seq*.

103. BBP is the exclusive, actual, and beneficial owner of all rights in and to the Copyrighted Footage, which is the subject of a valid copyright registration issued by the Register of Copyrights.

104. Defendant's creation and use of the Edited Trailer is an unauthorized distribution, reproduction, and public performance of the Copyrighted Footage.

105. Defendant had access to the Copyrighted Footage BBP sent them the Copyrighted Footage to prepare a final edit, consistent with the obligations stated in the DEAL MEMOs.

106. Defendant's activities, as alleged herein, constitute contributory infringement of BBP's rights in and to the federally registered copyright in the audio-visual cinematographic material embodied in the Copyrighted Footage, in that Defendant knowingly induced, caused, materially contributed in, and resultantly profited from the unauthorized distribution, copying, and public performance of the Copyrighted Footage.

107. The foregoing acts have been willful and intentional.

108. As a direct and proximate result of their wrongful conduct, Defendant has realized and will continue to obtain financial benefits rightfully belonging to BBP. Accordingly, BBP is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at BBP's election, pursuant to 17 U.S.C. § 504(b), BBP is entitled to its actual damages plus Defendant's profits from infringement, to be proven in trial.

109. BBP is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

## COUNT IV —BREACH OF CONTRACT

110. Plaintiff restates and incorporates by reference the facts and allegations in paragraphs 1-108 for all purposes.

111. The DEAL MEMOs form two separate contracts between Plaintiff and Defendant. Plaintiff asserts that Defendant has breached such contracts.

112. Defendant breached DEAL MEMO 1 and 4. Specifically, Defendant breached Section 7 of each DEAL MEMO, which explicitly says that "Crew Member hereby irrevocably assigns, in perpetuity and throughout the universe, all rights in and to the Proceeds to Producer, including the right to make any changes." Section 7 goes on: "Producer is the sole author and owner of the Proceeds."

113. Defendant's breaches include, but are not limited to: 1) signing the DEAL MEMOs that assert Plaintiff is the owner, then claiming ownership; and 2) releasing Plaintiff's footage, though, according to the DEAL MEMOs, that was assigned to Plaintiff as "sole author and owner of the proceeds;" and 3) being a signatory to the PSC d/b/a FIVE-TOOL PLAYER agreement and contracting with another party in a manner that directly conflicts with the existing contractual obligations contained in the DEAL MEMO.

114. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered damages in an amount to be proven at trial, including lost revenue.

115. Plaintiff has performed all conditions, covenants, and obligations required of it under any applicable contract, or such conditions have been waived or excused.

116. As these DEAL MEMOs are contracts subject to Texas law, Plaintiff seeks relief under the Texas Civil Practice and Remedies Code, Section 38.001.

117. Plaintiff therefore seeks all available damages, including but not limited to restitution, consequential damages, unpaid royalties, pre- and post-judgment interest, attorney's fees to the extent permitted by law or contract, and any further relief the Court deems just and proper.

### COUNT V—FALSE DESIGNATION OF ORIGIN PURSUANT TO 15 U.S.C. § 1125(A)

118. Plaintiff restates and incorporates by reference the facts and allegations in paragraphs 1-117 herein for all purposes.

119. Defendant caused confusion as to the origin of the footage for the Project.

120. Specifically, Defendant is listed as the sole production company or "studio" in connection with the Project on, at a minimum, the IMDB Page, the YouTube Page, the TMDB Page, the Letterboxd Page, and in the Edited Trailer.

121. Defendant's statements on the above-cited platforms are misrepresentations as to the source, affiliation, and marketing of the products and constitute false designation of origin by way of "reverse passing-off."

122. Defendant has applied its name on the Copyrighted Footage that is owned by Plaintiff and published it as though it was Defendant's.

123. As a result, Defendant alone is associated with a product created owned and produced by Plaintiff. Such acts damage the reputation and goodwill of Plaintiff in the marketplace.

### COUNT VI—SLANDER OF TITLE: COPYRIGHT

124. Plaintiff restates and incorporates by reference the facts and allegations in paragraphs 1-123 herein for all purposes.

125. Defendant has falsely represented that it has authority to continue production on the Project, create trailers, post trailers on movie database sites, or create other derivatives of the Project.

126. Specifically, Defendant has affirmatively posted trailers on movie database sites, and SINACORE, as the representative of PSC has emailed cast, crew, and even ROBINSON that he was working on the Project as late as July 2024.

127. Defendant made these untrue representations at the disparagement of Plaintiff's property—the rights in the Project.

128. Defendant's actions go beyond mere copyright infringement—it has affirmatively represented to others that Plaintiff is attempting to claim credit for PSC's original work.

129. As a result, Plaintiff suffered a pecuniary loss resulting from the impairment caused by Defendant, as the purported producer.

130. Defendant, with knowledge of its contractual obligations, took the full Project hostage once it saw a window. This actual malice is further evident by the fact that Defendant continued to produce the Project in secret, posted a trailer online on imdb.com and youtube.com, and credited PSC alone for the production.

131. Plaintiff suffered a pecuniary loss that resulted directly from Defendant's conduct, as the value of *Towpath* is substantially harmed by its actions of hostilely taking over the Project and purporting to produce it without Plaintiff's involvement. Additionally, the expenses necessary to counteract Defendant's actions—the expenses from this litigation and subsequent damage control—will be immense in order to remove the doubt and confusion resulting from the disparagement.

**COUNT VII—VIOLATIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. § 1202(B)(1), *et seq.***

132. Plaintiff restates and incorporates by reference the facts and allegations in paragraphs 1-131 herein for all purposes.

133. Defendant distributed the Edited Trailer for the Project, which included the Copyrighted Footage, knowing the copyright management information contained therein was false and/or incomplete.

134. Specifically, Defendant removed BBP's credit in the Edited Trailer, and modified each of the film directory websites to remove all references to BBP, or otherwise intentionally did not include credits for BBP on such pages.

135. Defendant's acts resulted in the distribution of the Copyrighted Footage with false copyright management information, including without limitation, copyright management information indicating that PAUL SINACORE CASTING d/b/a/ FIVE-TOOL PLAYER held rights in or a license to the Copyrighted Footage and the Edited Trailer.

136. Plaintiff alleges and believes that Defendant knew that the probable future impact of the distribution of false and/or incomplete copyright management information would lead the general public would associate ownership of the Project with Defendant rather than BBP.

137. By removing BBP's information from the Edited Trailer, Defendant intentionally removed copyright management information having reasonable grounds to know that it would or otherwise the specific intent to conceal their infringement of Plaintiff's ownership in the Copyrighted Footage.

138. The above conduct violates 17 U.S.C. § 1202(a) and (b) and BBP resultantly seeks separate statutory damages awards for each violation as well as attorney's fees and any other damages resultant from the violations.

**REQUEST FOR ENTRY OF PERMANENT INJUNCTION**

139. Plaintiff restates and incorporate by reference the facts and allegations in paragraphs 1-138 herein for all purposes.

140. The relative equities of the parties are best served by permanently enjoining Defendant's actions in continuing to edit, distribute, and promote the Project.

141. Given Defendant's intentional and overt misconduct, it is likely that, unless enjoined, it will continue to promote the Project, causing further damage to Plaintiff. Plaintiff seeks this Court's protection to avoid further infringement and deception of the Project Plaintiff sunk countless hours into to protect Plaintiff's interests.

142. Based on the foregoing, Plaintiff has shown a probable right to recover. In addition, Plaintiff does not currently have a wholly adequate remedy at law. Unless enjoined, Plaintiff will suffer—as it has already—clear, immediate, and irreparable injuries from Defendant's acts, including, *inter alia,* loss of business, damage to goodwill, and loss of quality control over her production business.

143. The harm and loss will continue unless this Court restrains, and ultimately permanently enjoins Defendant's conduct. Therefore, Plaintiff is entitled to permanent injunctive relief.

144. Plaintiff respectfully requests this Court enjoin Defendant by:

a. Enjoining Defendant from continuing to promote *Towpath* in any capacity;

b. Enjoining Defendant from submitting *Towpath* for any awards or certificates;

c. Ordering that a copy of all social media or internet post related to *Towpath* or *Dovey's Promise* controlled by Defendant or on their behalf be preserved or disclosed;

d. Ordering that Defendant, and any person or entity acting in concert with it, remove from social media accounts and the internet under their possession, custody, and control, all posts bearing mention of *Towpath* or *Dovey's Promise*;

e. Ordering that Defendant disclose the identity and location of any third parties with whom they have improperly authorized to edit, possess, or otherwise control any footage or documents related to *Towpath* or *Dovey's Promise*.

f. Such other and further relief, including that requested herein, to which Plaintiff may show itself justly entitled

**DECLARATORY AND INJUNCTIVE RELIEF**

**PURSUANT TO 28 USC § 2202**

145. Plaintiff restate and incorporate by reference the facts and allegations in paragraphs 1-144 herein for all purposes.

146. Under 28 U.S.C. § 2202 this Court is empowered to grant, "necessary or proper relief based on a declaratory judgment or decree…after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

147. Plaintiff has been harmed, and Defendant has been unjustly enriched, by Defendant's improper assertion of ownership over the Project it does not actually own.

148. Plaintiff seeks relief upon the entry of a declaratory judgment upon Plaintiff's claims, as follows: an injunction to prevent Defendant from making further representations of ownership of the copyright in the Project's screenplay and audio-visual works.

**RECOVERY OF ATTORNEY'S FEES**

149. Plaintiff restates and incorporates by reference the facts and allegations in paragraphs 1-148 herein for all purposes.

150. This action is subject to the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

151. In connection with Plaintiff's claims for copyright infringement, Plaintiff seeks its reasonable and necessary attorney's fees and costs pursuant to 17 U.S.C. § 505.

152. In connection with Plaintiff's claim for breach of contract, Plaintiff seeks the recovery of reasonable attorney's fees and costs pursuant to TEX. CIV. REM. CODE § 38.001, *et seq*.

153. In connection with Plaintiff's claim for false designation of origin under the Lanham Act, and the fact this is an exceptional case, Plaintiff seeks the recovery of attorney's fees and costs pursuant to 15 U.S.C. § 1117.

154. In connection with Plaintiff's request for relief under the Digital Millennium Copyright Act, 17 U.S.C. § 1202, *et seq.*, Plaintiff seeks their reasonable and necessary attorney's fees and costs.

**JURY DEMAND**

155. Pursuant to FED. R. CIV. P. 38, Plaintiff requests a jury trial of all issues which may be submitted to and triable by a jury.

**REQUESTS FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully request that this Court grant the following relief:

A. An injunction ordering Defendant from continuing to promote *Towpath* in any capacity;

B. An injunction ordering Defendant from submitting *Towpath* for any awards or certificates;

C. An Order that a copy of all social media or internet post related to *Towpath* or *Dovey's Promise* controlled by Defendant or on their behalf be preserved or disclosed;

D. An Order that Defendant, and any person or entity acting in concert with them, remove from social media accounts and the internet under their possession, custody, and control, all posts bearing mention of *Towpath* or *Dovey's Promise*;

E. An Order that Defendant disclose the identity and location of any third parties with whom they have improperly authorized to edit, possess, or otherwise control any footage or documents related to *Towpath* or *Dovey's Promise;*

F. A declaratory judgment that Defendant's Copyright Registration is invalid and ineligible for federal copyright protection;

G. A declaratory judgment that the Defendant committed fraud on the Copyright Office in the prosecution of the application for his Registration;

H. This Court seek the advice of the Register of Copyright as to whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration;

I. Costs and reasonable attorneys' fees relating to this action pursuant to 17 U.S.C. §§ 101, 505, 1202, 15 U.S.C. § 1117, and TEX. CIV. REM. CODE. § 38.001, *et seq.*

J. Costs and reasonable attorney's fees relating to the tort of another cause of action.

Date: September 2, 2026

Respectfully submitted,

**BARKS PLLC**

By: /s/ Justen S. Barks
JUSTEN S BARKS

Attorney for Plaintiff
BLUE BRAIN PRODUCTIONS LLC

Email: edocs@barks.law